MAKAR, J.,
concurring with opinion.
I fully concur in Judge Thomas’s opinion, which finds no constitutional violation under the theory that the complex teacher performance statute at issue, section 1012.34, Florida Statutes, on its face violates separation of powers principles. Art. II, § 3, Fla. Const. I write to supplement his opinion with the entire statutory text and to point out that the complexity of the *595 legislative policy at issue makes the need for flexibility even more important.
The teachers’ claim is that the State Board of Education has “unbridled discretion” in implementing the statute due to its abject lack of guidance. In its written order, the trial court rejected this claim, finding that Florida Teaching Profession-National Education Association v. Turlington, 490 So.2d 142, 146 (Fla. 1st DCA 1986), had already “addressed this issue” of whether proper delegation existed. The trial court noted that minimum standards and guidelines are required when the Legislature gives administrative discretion to another branch, the “specificity of which is dependent upon the subject’s complexity.” The court then discussed the applicable constitutional test, closely reviewed the complex statute and its subsections (in the appendix below), and held that the “Legislature provided sufficient guidelines” to avoid an unconstitutional delegation of legislative authority to the executive branch.
Almost thirty years ago in Turlington, a similar teacher performance statute was alleged to be an unlawful, standardless delegation of legislative authority. This Court, however, affirmed the constitutionality of that statute. The teacher performance statute in Turlington created the “Merit Schools Program,” which included a “State Master Teacher Program” that authorized payment of incentive awards “to superior teachers who voluntarily document their fulfillment of statutory eligibility criteria.” The Board was “directed to adopt rules for this program” and did so by setting forth “extensive criteria governing the performance evaluations and subject area examinations required by the program” as well as “subject area examinations” to be approved by the Board. Turlington, 490 So.2d at 144-45.
The constitutional question was whether the statute permitted the “unrestricted exercise of discretion by officials of the Department of Education.” Id. at 146. Concluding the statute did not, this Court noted that the statute “confers permissible administrative discretion ... to administer new and innovative programs, but they do not enable officials to ‘say what the law is.’ ” Id. Notably, the “failure” of the Department to initially approve a plan under the statute was deemed unimportant, this Court noting that the statute permitted a range of potential plans and a “balance” had to be struck between the interests of the teachers and the Department. No specific plan was constitutionally required; time and flexibility were necessary to get input from affected persons and entities.
Turlington has exceptionally close parallels to this case. And the statute at issue, section 1012.34, has at least as much detail and parameters as was upheld in Turlington, as Judge Thomas explains, and as the trial court concluded in its order. Section 1012.34(2) provides detailed requirements for evaluation systems. The statute has sufficient detail and guidance to reflect the Legislature’s policy decision that the evaluation of student learning growth be based on the factors in subsection (7), and that the evaluation system provide for differentiated performance levels under the factors in subsection (3)(a) to be implemented by rule via subsection (8).
Reading subsection (8) in isolation and independent from the remainder of the statute is a no — no under the principle that statutes must be read as a whole. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) (“Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.”); see also Stephen Breyer, *596 Active Liberty 101 (Vintage Books 2006) (“An overly literal reading of a text can too often stand in the way” of “translat[ing] the popular will into sound policy”). Rather than “unbridled discretion,” or an ability to operate in a wholly unrestricted way that sets a new and untethered legislative policy, section 1012.34 overall provides sufficient guidance and constraints to channel the Board of Education’s actions and prevent it from operating in a wholly unchecked manner. Subsection (8)’s delineation of categories for rulemaking purposes is part and parcel of the overall legislative policy, reflected in section 1012.34, to evaluate the performance of duties and responsibilities of educational personnel in a structured, detailed, and comprehensive way. This is a wonkish and gruelingly detailed undertaking that involves technical, methodological, and scientific expertise that, legislators (and courts) lack, but which is assisted by public input.[3]
Given the complexity of the legislative policy goals, which have only increased since the time of Turlington (as Judge Benton’s opinion makes evident), the statute provides constitutionally . adequate guidance and constraints to prevent the Board from wandering too far afield. Of course, the statute could be written in even greater detail and complexity, as Judge Thomas notes. But Turlington and related cases from our supreme court allow for a degree of leeway in the implementation of “innovative” and complex programs (such as the one at issue) if the Legislature provides “reasonable guidance,” which it has.[4] Until the VAM formulary, in all its complexity, becomes better formed, how the data distribution will look in real-life applications is indeterminate — but not thereby unconstitutional. The Legislature could have specified a precise statistical standard (two deviations above the norm = effective;- two standard deviations below the norm = ineffective) or the like, but no legal principle says it must do so. After all, this is supposed to be a merit system, not a raw quota. Indeed, it would be problematic-if the constitution required the Legislature to define with mathematical precision the demarcation points of a statistical distribution that is as yet unknown, which is why the Legislature deferred to the Board’s unquestioned expertise on the highly complicated, multivariate task at hand.
History is replete with legal battles over the murkiness of standards, a good example being litigation in which competitors *597 fought for a decade about what percentage of peanuts was necessary to call their products “peanut butter.”[5] In this case, given the complexity of the topic at hand, and the controversy it continues to spawn from Turlington to the present day, litigation over the standards for evaluating teacher effectiveness likely face a similar fate. Unless our supreme court alters course, and compels legislators to pass laws on highly complex subjects with more precision than has previously been deemed permissible, we must follow its existing jurisprudence and our decision in Turlington by affirming — thereby recognizing legislative deference to the agency’s expertise on this complex topic.

. That the Board, or indeed any agency, seeks input from the public on a complex topic during the rulemaking process is neither a failing nor a concession that statutory guidance is lacking; instead, it is a requisite — and oftentimes helpful — step that can help fine-tune a proposed rule and give affected persons an inclusive point of entry. That one bullet point on one power-point slide presented at one rule-making workshop asks for public input on the standard to be adopted in utilizing highly complex Value-Added Models (VAM) for evaluating and classifying teachers does not move the chains up-field on the teachers’ constitutional challenge, particularly given the hefty burden of proof that applies.

. Section 120.52(8), which in a 1996 statutory rewrite narrowed the administrative power of agencies in their rule-making functions, has no relevance in this constitutional challenge. The statute was not mentioned by the parties and the plaintiff-teachers do not claim that the Board has adopted a rule that is invalid under section 120.52(8). Instead, the only issue presented is the facial constitutionality of the challenged statute under separation of powers principles. The outcome of this constitutional case is controlled by Turlington and similar non-delegation cases, not by a 1996 statutory change to administrative rule-making. Stated differently, the judicially-established test for the constitutionality of a statute is unaffected by the legislatively-adopted change to section 120.52(8).

. See Food Standard Innovations: Peanut Butter’s Sticky Standard, U.S. Food & Drug Administration, at http://www.fda.gov/About FDA/WhatWeDo/History/ProductRegulation/ ucm 132911 .htm. In describing the FDA’s experience in proposing a standard in 1961 that peanut butter be recognized as at least 90 percent peanuts and allowing for additional sweeteners,
Three competitive brands of peanut butter then entered the standards battle: Skippy, Jif, and Peter Pan. The public evidentiary hearing alone, a small fragment in the decade long process, took twenty weeks and produced a transcript of nearly 8,000 pages. A prominent attorney on the case wryly observed that the peanut butter standards ‘put many lawyers’ children through college’. Participants began to feel that they were close to arguing about the number of angels dancing on the head of a pin when it became clear that the disagreement between the industrial protagonists was over a mere 3 per cent difference in proposed peanut content. In the end, the gov-emment did prevail as the U.S. Appeals Court affirmed the FDA order setting standards for peanut butter at no less than 90 percent for peanuts and no more than 55 percent fat. The court found the Commissioner’s findings to be based upon substantial evidence and the promulgation of such standards within his authority.